IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JILL E. FLATT,                          )
                                        )
                    Plaintiff,          )
                                        )
        -versus-                        )        Civil Action No.: 1:04CV01067
                                        )
JO ANNE B. BARNHART,                    )
Commissioner of Social Security,        )
                                        )
                    Defendant.          )

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Jill E. Flatt, brought this action pursuant to Section 205(g) of the

Social Security Act, as amended (42 U.S.C. § 405(g)), to obtain judicial review of a

final decision of the Commissioner of Social Security denying her claim for Disability

Insurance Benefits under Title II of the Social Security Act (the "Act").[1]  The parties

have filed cross-motions for judgment, and the administrative record has been

certified to the court for review.

## Procedural History

Plaintiff filed an application for Disability Insurance Benefits on January 7,

2002, alleging a disability onset date of May 11, 2001.[2]  Tr. 84.  The application was

_____

[1]  The Social Security Disability Insurance Program was established by Title II of the
Act, 49 Stat. 622 (codified at 42 U.S.C. § 401 et seq.).

[2]  In the body of her decision, the ALJ determined that Plaintiff had substantial gainful
activity through September 2001.  See Tr. 16.

denied initially and upon reconsideration.  Tr. 60, 62.  Plaintiff then requested a hearing <u>de novo</u> before an Administrative Law Judge (ALJ).  Tr. 74.  Present at the hearing, held on May 5, 2004, were Plaintiff, her attorney, and both a medical expert (ME) and a vocational expert (VE).  <u>See</u> Tr. 29.

By decision dated August 2, 2004, the ALJ determined that Plaintiff was not disabled within the meaning of the Act.  Tr. 15.  On September 28, 2004, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 5), thereby making the ALJ's determination the Commissioner's final decision for purposes of judicial review.

In deciding that Plaintiff is not entitled to benefits, the ALJ made the following findings, which have been adopted by the Commissioner:

1.    The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through the date of this decision.

2.    The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3.    The claimant's plantar fasciitis, tarsal tunnel syndrome, and a mood disorder are considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(c).

4.    These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5.    The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

2

6.    The claimant has the following residual functional capacity:  she can stand and walk for prolonged periods of time so long as she has the option to sit or stand and change her position every hour for several minutes, lift, push, pull or carry up to twenty pounds at a time so long as she does not have to perform continuous tasks requiring repetitive motions with her right lower extremity, has to only occasionally climb stairs and ramps, and rarely or never climbs ladders, ropes or scaffolding.   She has to avoid moderate exposure to dangerous machinery or unprotected heights, and has unilateral vision but has made accommodations and is able to do ordinary tasks.  Therefore, the claimant has the residual functional capacity for light work as defined in 20 CFR 404.1567.

7.    The claimant is unable to perform any of her past relevant work (20 CFR § 404.1565).

8.    The claimant is an "individual closely approaching advanced age" (20 CFR § 404.1563).

9.    The claimant has a "high school (or high school equivalent) education" (20 CFR § 404.1564).

10.   The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 CFR § 404.1568).

11.   The claimant has the residual functional capacity to perform a significant range of light work (20 CFR § 404.1567).

13.   Although the claimant's exertional limitations do not allow her to perform the full range of light work, using Medical-Vocational Rule 202.14 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform. Examples of such jobs include work as cashier II, (DOT # 211.462-010), photocopy machine operator (DOT # 207.685-014), or office helper (DOT 239.567-010).  The vocational expert testified that there were 1,000 to 2,000 jobs in North Carolina as a cashier II, 800 to 1,000 jobs in North Carolina as a photocopy machine operator, and 1,000 to 2,000 jobs in North Carolina as an office helper.  Therefore, there are a significant number of jobs in the national economy that the claimant could perform.

13.  The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 404.1520(g)).

Tr. 22-23.

## Analysis

In her brief before the court, Plaintiff argues the Commissioner's findings are in error because the ALJ (1) failed to adopt the opinions of certain caregivers that she is disabled; (2) decided that Plaintiff did not meet Listing 1.02; (3) erred in finding her less than credible; and (4) mistakenly assessed her residual functional capacity. The Commissioner contends otherwise and urges that substantial evidence supports the determination that Plaintiff was not disabled.

### Scope of Review

The Act provides that, for "eligible"[3] individuals, benefits shall be available to those who are "under a disability," defined in the Act as the inability:

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Social Security Administration ("SSA"), by regulation, has reduced the statutory definition of "disability" to a series of five sequential questions.  An examiner must determine

---

[3]  Eligibility requirements for disability insurance benefits are found at 42 U.S.C. § 423(a)(1).

whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Act's listing of impairments, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents her from doing any other work. 20 C.F.R. § 404.1520.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. Richardson v. Perales, 402 U.S. 389 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a de novo review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. See Pyles v. Bowen, 849 F.2d 846, 848 (4th Cir. 1988) (citing Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986)); see also Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (the issue before the court is not whether the claimant is disabled, but whether the ALJ's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law).

Substantial evidence is:

"evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that this conclusion is rational. Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

Pertinent Evidence Presented

As of the date of the ALJ's decision, Plaintiff was fifty-four years of age. See Tr. 15. The ALJ found that she has a high school education and past relevant work as a waitress, short order cook, cook, and baker. According to the ALJ, Plaintiff initially alleged disability due to a right foot injury with nerve damage.

The ALJ found that Plaintiff had not engaged in substantial gainful activity "since the alleged onset of disability."[4] Tr. 22. She also determined that Plaintiff met the disability insured status requirements of the Act through the date of the decision. Further, the ALJ found the medical evidence to establish that Plaintiff suffered from the severe impairments of plantar fasciitis, tarsal tunnel syndrome, and a mood disorder. She concluded, nevertheless, that none of these impairments met or equaled any of the Listing of Impairments.

---

[4]    But see note 2, supra.

6

1.  Treating Physician Opinions

Plaintiff has several problems with the ALJ's lack of acceptance of her doctors' opinions as to her disability.  But SSA regulations provide for the Commissioner to give more weight to the opinion of a "treating physician" because that physician is most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability:

> Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion.  When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source.

20 C.F.R. § 404.1527(d)(2).

Plaintiff has made no showing that those caregivers who offered opinions as to her disability – Dr. Alan Bocko and Dr. Arthur Axelbank – were indeed "treating physicians."  There is no record of Plaintiff seeing Dr. Axelbank on other than one occasion, May 18, 2004 (two weeks after her disability hearing).  <u>See</u> Tr. 221.  The stated reason for the visit was, "Comes in for an opinion about her disability status."  <u>Id.</u>  <u>Cf.</u>  <u>Henderson v. Sullivan</u>, 930 F.2d 19, 21 (8th Cir. 1991) (discounting "the opinion of a non-treating physician who has seen the patient only once, at the request of the patient or her lawyer").

Plaintiff saw Dr. Bocko on only two occasions, separated by a period of sixteen months.  <u>See</u> Tr. 212, 215.  Plaintiff reasons that "many folks have no health

7

insurance and are reluctant to seek medical attention absent fair belief that some relief is available. . . . She has been told that further surgery on her foot is pointless." Pl.'s Br. at 2 (citing Tr. 35). This explanation, however, begs the issue: the point remains that two visits over the course of sixteen months does not provide Dr. Bocko with the "longitudinal picture" envisioned by the regulations. See also 20 C.F.R. § 404.1527(d)(2)(I) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion."); Mitchell v. Schweiker, 699 F.2d 185, 187 (4th Cir. 1983) (according "great weight" to the opinion of a claimant's treating physician "for it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time").

Moreover, there is evidence that Plaintiff *did* have insurance during the intervening period. See Tr. 228 (6/3/03 record noting that Plaintiff "will check with her insurance company" about pursuing counseling); Tr. 225 (8/5/03 record referring to Plaintiff's "insurance companies"). And Plaintiff had at least five caregiver visits during the period. See Tr. 225-30. Further, although there is no showing that Plaintiff's foot impairments could be cured, there is evidence of treatment options that would improve Plaintiff's condition, including notations by Dr. Bocko.[5] See Tr. 214 (discussing "several options for treatment"); Tr. 215 (again discussing

---

[5] Interestingly, prior to opining that Plaintiff was "permanently disabled," Dr. Bocko observed that Plaintiff "seems to be doing well with the present treatment." Tr. 215.

"several treatment options").  See also Tr. 221 (Dr. Axelbank suggesting physical

therapy "as a way to help [Plaintiff] with her foot pain").  Last of all, at her first visit

with Dr. Bocko, he suggested that surgery *was* a possible option for her.  Tr. 214

(depending on the results of other treatments, "recommend[ing] surgical release of

the tendon").

> Nonetheless, Plaintiff proceeds to cite to Dr. Bocko's opinion:
>
> It is my opinion that [Plaintiff] is permanently disabled due to chronic
> tarsal tunnel syndrome.  This chronic neuropathic problem causes
> significant swelling and redness in the foot within an hour of standing.
> She must then elevate her foot and apply ice for 30 to 60 minutes to
> decrease the swelling.  Even with multiple conservative treatments, she
> continues to have constant pain.

Tr. 216.

A treating physician's opinion on the nature and severity of the claimed

impairment is entitled to controlling weight only if it is (1) well supported by medically

acceptable clinical and laboratory diagnostic techniques and (2) not inconsistent with

other substantial evidence in the record.[6]  See 20 C.F.R. § 404.1527.  Thus, "[b]y

negative implication, if a physician's opinion is not supported by clinical evidence or

if it is inconsistent with other substantial evidence, it should be accorded significantly

less weight."  Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996).  See also Mastro v.

Apfel, 270 F.3d 171, 178 (4th Cir. 2001) ("Under such circumstances, the ALJ holds

---

[6]  Plaintiff asserts that the opinion of a treating physician (which, it has been
established, Dr. Bocko and Dr. Axelbank are *not*) "is binding on the finder of fact, unless
it is contraverted [sic] by substantial evidence."  Pl.'s Br. at 7.  Plaintiff's statement of the
current status of the law is incorrect.

9

the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence.").

In this case, Dr. Bocko's opinion is not well-supported. There is no record that he employed any clinical or laboratory diagnostic techniques, other than direct examination, and his exam findings do not substantiate his opinion. When Dr. Bocko refers to "[t]his chronic neuropathic problem," it is a general citation, not to Plaintiff in particular. On neither occasion did his exam reveal either swelling or redness. See Tr. 213 ("normal temperature, color and texture"); Tr. 215.

There is no indication that Dr. Bocko prescribed elevation and ice as a treatment for Plaintiff. He, of course, simply relates Plaintiff's own report when he says that she has "constant pain." See Mastro, 270 F.3d at 178 (little weight may be accorded an opinion based mainly on plaintiff's subjective complaints). Further, the doctor relies upon only Plaintiff's own statements in concluding she underwent or complied with "multiple conservative treatments"; he has only minimal records of his own on which to rely, and there is no showing that Dr. Bocko reviewed treatment records from other caregivers.

Plaintiff next cites to Dr. Bocko's opinion that Plaintiff is incapable of light work and can do only sedentary work, but SSA has determined that opinions on some issues, such as residual functional capacity, are not "medical opinions," "but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the

10

determination or decision of disability." 20 C.F.R. § 404.1527(e). SSA gives no special significance to the source of such opinions.

Plaintiff's discussion of Dr. Axelbank's opinion follows the same course, noting his recitation of her chronic plantar fasciitis pain for several years, her failed use of different treatment modalities, and her difficulty being on her feet. And the same objections apply to Dr. Axelbank's letter: there are no records of any techniques employed other than an examination of Plaintiff's right foot and ankle, and right elbow and shoulder. <u>See</u> Tr. 221.

As with Dr. Bocko, the exam findings do not support the doctor's opinion. Plaintiff's foot was "not particularly swollen," there was neither plantar tenderness nor deformity, and range of motion of both the ankle and foot was full. Her lower extremity pulses were one-plus and symmetrical, and peripheral circulation was intact with normal capillary refill. There was no calf tenderness or masses. Again, there is no showing that Dr. Axelbank reviewed any of Plaintiff's previous medical records regarding her foot and ankle problems.

Dr. Axelbank, as did Dr. Bocko, simply repeats Plaintiff's own representation that she frequently ices and elevates her foot. Dr. Axelbank agreed to "certify[]" Plaintiff's disability, but such "certification" is a decision for the Commissioner and, thus, of no particular moment. 20 C.F.R. § 404.1527(e); <u>see also</u> Social Security Ruling (SSR) 96-5p, 61 Fed. Reg. 34471, 34472 ("[T]reating source opinions on

11

issues that are reserved to the Commissioner are never entitled to controlling weight or special significance.").

Further, there are in the record contraindications to these doctors' opinions. Of course, there is the sixteen-month period during which there is no record that Plaintiff complained of foot pain. When taking Plaintiff's disability application, the state agency employee noted that Plaintiff exhibited no difficulties, including walking and standing. Tr. 101. During an examination in July 2003, Plaintiff was able to stand on her toes and heels. Tr. 227.

In answering questions about her activities of daily living, Plaintiff stated that she walked her dogs several times a day, cleaned house, grocery shopped, and prepared meals. Tr. 111. She could walk several blocks before experiencing problems with her foot. Plaintiff also did yard work. Tr. 113. In fact, one of her doctor's visits was prompted by an incident while rock gardening. Plaintiff complained of left hip pain after she "lifted ‑ 10-12 large rocks (‑ 40 lb ea)." Tr. 227. A few months earlier, she had pulled a muscle in her left chest wall "while lifting a heavy object." Tr. 229.

There is no record that Plaintiff took prescription medication for her foot pain, after a trial of Celebrex in November 2000, yet she has used prescription pain medications on various other occasions. See, e.g., 223 (Ultram); 227 (Naproxen,

Ultram)[7]; 229 (Arthrotec)[8].  Plaintiff preferred to use only acetaminophen (brand name, Tylenol), an over the counter medication.  See Shively v. Heckler, 739 F.2d 987, 990 (4th Cir. 1984) (the weakness of pain medication is a factor to be considered in assessing the severity of a claimant's pain).  She testified that Dr. Bocko offered a prescription, but she declined, thinking it "a bad idea to start on pain medication" when she could manage her pain.  Tr. 41.  Plaintiff does regularly take Ativan to help her sleep and Flexeril, a muscle relaxant.  Tr. 37.

2.  Listing of Impairments

At the third step of the sequential evaluation process, the ALJ must determine whether the claimant's severe impairment meets or equals the medical criteria found in the Listing of Impairments.[9]  20 C.F.R. § 404.1520(a)(4)(iii).  "If it does, a finding of disability without consideration of vocational factors is mandated."  Kennedy v. Heckler, 739 F.2d 168, 171 (4th Cir. 1984).

In the instant case, the ALJ duly considered the possibility that Plaintiff met the criteria for Listing 1.02,[10] but determined that her "ability to ambulate effectively was

---

[7]  On this occasion, Plaintiff called requesting *stronger* pain medication. Tr. 227. She was advised it had been only 2 days, and she should continue on the medications as prescribed.

[8]  After two days, Plaintiff complained that the prescribed medication was "not strong enough." Tr. 229.  The caregiver then prescribed Vicodin.

[9]  The Listings are found at 20 C.F.R. Part 404, Subpart P, Appendix 1.

[10]  1.02  Major dysfunction of a joint(s) (due to any cause):  Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability)
(continued...)

not affected by her plantar fasciitis." Tr. 19. Plaintiff argues, "This is akin to saying that [Plaintiff] has all manner of awful foot pain and swelling, but it doesn't affect her ability to walk around. Common sense and a fair reading of Listing 1.02 would seem to dictate otherwise." Pl.'s Br. at 3. Common sense and fair reading, however, add up to neither legal reasoning nor objective evidence, and Plaintiff has failed to carry her burden[11] to prove that she does, indeed, satisfy the Listing.

The Listings define "inability to ambulate effectively," in part, as "having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." Listing 1.00B2b(1). There is no affirmative evidence that Plaintiff uses an assistive device,[12] and the consultative examiner, Dr. Calvin Pon, observed "no

---

[10]  (...continued)
and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;
>
> or
>
> B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

[11]  The claimant bears the burden of production and proof during the first four steps of the sequential evaluation process. See Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

[12]  Plaintiff did testify that she "sometimes" uses a cane to walk in her yard. Tr. 36-37.

14

ambulatory aid." Tr. 196. And Plaintiff told a caregiver that she "walks on a regular basis." Tr. 230. The court finds substantial evidence to support the ALJ's step three finding.

3. Credibility

Plaintiff next contends that the ALJ "may well have" required objective evidence of pain, contrary to established Fourth Circuit law.[13] Pl.'s Br. at 3. She points out that both Dr. Bocko and Dr. Axelbank refer to her chronic pain and her need to frequently elevate and ice her foot but, as discussed above, these doctors merely repeated information given to them by Plaintiff. Such statements can only be relied upon if the ALJ finds Plaintiff to be credible, which she did not. Cf. Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (if proof of disability is based upon

_____

[13] Plaintiff refers to "Hyatt," without a specific case citation, but there are some 15 published Hyatt cases. The court believes that Plaintiff refers to Hyatt v. Sullivan, 899 F.2d 329 (4th Cir. 1990), which provides:

Once an underlying physical or mental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motory disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

Id. at 337.

15

subjective evidence, the credibility determination is critical to the decision); <u>Basinger v. Heckler</u>, 725 F.2d 1166, 1170 (8th Cir. 1984) (where proof of disability depends substantially upon subjective evidence, credibility determination is critical factor in decision).

The consistency of a claimant's allegations is crucial in determining their credibility. <u>See, e.g.</u>, SSR 96-7p, 61 Fed. Reg. 34483, 34486 ("A strong indication of credibility is the consistency, both internally and with other information in the case record, of the claimant's statements[.]"); <u>Craig</u>, 76 F.3d at 595 (a claimant's allegations about her pain "need not be accepted to the extent they are inconsistent with the available evidence"); <u>Mickles v. Shalala</u>, 29 F.3d 918, 930 (4th Cir. 1994) ("[A]n unexplained inconsistency between the claimant's characterization of the severity of her condition and the treatment she sought to alleviate that condition is highly probative of the claimant's credibility."). As touched on above, there are a number of inconsistencies in the record.

Plaintiff stated that heavy lifting was "out of the question," Tr. 125, yet she pulled a chest muscle while lifting a heavy object, Tr. 229, and she suffered hip pain after lifting forty-pound rocks, Tr. 227. She told the state agency that she no longer did lawn work, Tr. 132, but listed "gardening" among her hobbies, Tr. 212. Plaintiff said both that she could not walk more than two blocks, Tr. 132, and that she walked on a regular basis, Tr. 230. She testified that her second surgery did not help at all, Tr. 34, and told Dr. Axelbank that it did not help, Tr. 221. Yet Plaintiff said to both

16

Dr. Pon, Tr. 196, and Dr. Bocko, Tr. 212, that the surgery immediately decreased her pain twenty percent.

Compliance with prescribed treatment is also an indication as to the severity of pain. See Hunter v. Sullivan, 993 F.2d 31, 36 (4th Cir. 1992) (claimant's failure to follow medical and physical therapy regimen supported ALJ's inference that claimant's pain was not as severe as he asserted). Cf. 20 C.F.R. § 404.1530(a) ("In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work."). Plaintiff was discharged from physical therapy after she failed to return following her third session. See Tr. 185. Also, Plaintiff told Dr. Bocko that she did not wear her orthotics, which were painful and aggravating. Tr. 212. But the doctor concluded, "Because she seems to be doing well with the present treatment I recommend the continued use of appropriate shoes and inserts as needed." Tr. 215. At their first visit, Dr. Bocko suggested several treatment options, see Tr. 214, yet Plaintiff did not return to him, or seek treatment for her foot, for sixteen months.

Moreover, the objective medical evidence does not support Plaintiff's complaints. Dr. Pon noted that Plaintiff's gait was normal, with a normal cadence, velocity, and stride length, and with no limp. Tr. 197. Her ankle had full range of motion in both dorsiflexion and plantar flexion. Plaintiff's ankle strength was five of five, and her ankle jerk was two-plus. Even after years of complaints, Plaintiff's thigh and calf circumferences were equal.

17

Dr. Bocko's exam findings were similarly unimpressive. He observed no redness, Plaintiff's pulses were two-plus, and her sensation intact. Tr. 213. Dr. Bocko noted normal tone, size, and strength musculature. There was no significant inflammation, warmth, or mass. Dr. Axelbank observed that Plaintiff was "well appearing," and her foot was not particularly swollen. Tr. 221. He found no plantar tenderness or deformity, and a full range of motion of the foot and ankle. Plaintiff's pulses were symmetrical, and her peripheral circulation seemed intact, with normal capillary refill.

Plaintiff objects to the ALJ's contrasting her assertion of constant pain with her statement that she controls her pain with ice and Tylenol. <u>See</u> Tr. 20. She states: "But <u>controlled</u> does not mean <u>vanquished</u>, for heaven's sake. Sure she is able to get/keep the pain level so she can function in life, and we are thankful for that, as some pain is subject to no control at all." Pl.'s Br. at 4. But as noted in <u>Shively</u>, 739 F.2d at 990, the weakness of pain medication is a factor to be considered in assessing the severity of a claimant's pain. That Plaintiff can control her pain with such standard measures belies a pain of disabling severity. <u>See</u> <u>Gross v. Heckler</u>, 785 F.2d 1163, 1166 (4th Cir. 1986) (if symptoms are, or can be, reasonably controlled by medication, they may not be considered disabling under the Act). As succinctly put in <u>Gossett v. Bowen</u>, 862 F.2d 802 (10th Cir. 1988), "[D]isability requires more than mere inability to work without pain." <u>Id.</u> at 807 (citations omitted; alteration in original). <u>Cf.</u> <u>Craig</u>, 76 F.3d at 592 (pain is not per se disabling).

18

4.  Residual Functional Capacity (RFC)

Plaintiff contends the ALJ's RFC finding is contradicted by the letters of Dr. Bocko and Dr. Axelbank, but these opinions have been given little weight, as discussed hereinabove.  And the ALJ's finding finds support in other opinions in the record:

С the consultative examiner, Dr. Pon, stated that Plaintiff could stand/walk for six of eight hours, and sit for six of eight hours, Tr. 198;

С the SSA disability expert opined that Plaintiff could perform "light"[14] work, with postural limitations of only "frequent" climbing and balancing, and "occasional" stooping, kneeling, crouching, and crawling, Tr. 205-06;

С the ME testified that Plaintiff would require a sit/stand option; could bend only occasionally; and could not work around heavy machinery or hazards because of unilateral vision, work beyond light exertion, or continuously use her right lower extremity for pedals or pushing, Tr. 49-51.

The state agency consultants and program physicians and psychologists are experts in SSA disability programs, and the regulations require factfinders  to

---

[14]   "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. § 404.1567(b).

consider their findings of fact.  SSR 96-6p, 61 Fed. Reg. 34466, 34467 (citing 20

C.F.R. § 404.1527(f)).    Ruling 96-6p also provides that "[i]n appropriate

circumstances," the opinions of state consultants may be entitled to greater weight

than that of a treating physician, such as when the state consultant's opinion "is

based on a review of a complete case record."  Id. at 34468.  It is clear from the

ME's testimony that she had reviewed the complete record through the date of the

hearing,[15] and was able to question Plaintiff at will.  See Tr. 44-49.  Furthermore, in

the Fourth Circuit, if the medical expert testimony from examining or treating

physicians goes both ways, a determination coming down on the side of the non-

examining, non-treating physician should stand.  Smith v. Schweiker, 795 F.2d 343,

346 (4th Cir. 1986) (citing Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984)).

Thus, the ALJ did not err in weighing the experts' opinions more highly than that of

non-treating physicians.

Plaintiff argues that the ALJ's RFC finding overlooks the requirement that she

elevate and ice her foot as needed for thirty to sixty minutes at a time.  But the ME

was aware of this allegation when offering her RFC opinion, see Tr. 47, as was the

ALJ.  He remarked, "The claimant asserted that her second surgeon, Dr. [Craig

Shapero], recommended that she utilize this regimen."  Tr. 19; see also Tr. 52.  As

---

[15]    Only after her hearing did Plaintiff submit Dr. Bocko's and Dr. Axelbank's letters and
records from their belated examinations, and also records from the Orange Family Medical
Group, which did not treat Plaintiff for her foot and ankle problems.  See Tr. 3.

20

there is no record evidence that this treatment was indeed recommended by a caregiver, and given the ALJ's credibility finding, the court finds no error.

Plaintiff next asserts that Dr. Pon's consultative examination is too dated to be of use. But Plaintiff alleged an onset date of May 11, 2001, and Dr. Pon conducted his exam on February 12, 2002. His findings are at least probative that, seven months after Plaintiff contended she was disabled from all but sedentary work, an SSA expert found her capable of light work.

Plaintiff blithely describes Dr. Pon's findings as possible "evidence as to onset date . . . but that's all." Pl.'s Br. at 6. But the claimant's allegation of onset "is significant . . . only if it is consistent with the severity of the condition(s) shown by the medical evidence," SSR 83-20, 1983-1991 Soc. Sec. Rep. Serv. 49, 49 (West 1992), and there is no evidence that Plaintiff is "disabled" until her March 2, 2004, visit with Dr. Bocko. And taking Plaintiff's reasoning one step further, the opinions from Dr. Bocko and Dr. Axelbank would be proof only that they found her disabled as of the date of their opinions in 2004, and not earlier.

**Conclusion and Recommendation**

For the foregoing reasons, the decision of the Commissioner is supported by substantial evidence and the correct legal principles were applied. Therefore, IT IS RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED. To this extent, Plaintiff's motion for summary judgment (Pleading no. 7) seeking a reversal of the Commissioner's decision should be DENIED, Defendant's

21

motion for judgment on the pleadings (Pleading no. 9) should be GRANTED, and this action should be DISMISSED with prejudice.

WALLACE W. DIXON
United States Magistrate Judge

October 26, 2005